Michael C. Fallon, SBN 088313
Attorney at Law
100 E Street, Suite 219
Santa Rosa, California 95404
Telephone: (707) 546-6770
Facsimile: (707) 546-5775
mcfallon@fallonlaw.net

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In Re:                                          Case No.  14-11162

CAPTURE WINE BRANDS, LLC                        Chapter 11
A California Limited Liability Company
IDN 26-3121076

    Debtor.
_____/

## MOTION FOR AUTHORITY TO SELL PERSONAL PROPERTY FREE AND CLEAR OF LIENS
## MOTION FOR AUTHORITY TO REJECT EXECUTORY CONTRACTS

TO:    UMPQUA BANK, HERITAGE BANK OF COMMERCE
        COPPER PEAK LOGISTICS, LAKE COUNTY LAND CATTLE
        BELLA VISTA FARMING, KENT RICHIE, FALLEN LEAF VINEYARD

TO:    DISTRIBUTORS OF CAPTURE WINES

      Capture Wine Brands, LLC ("Capture") hereby files its motion for an order pursuant to 11 USC § 363(f) and (m) authorizing the sale of personal property free and clear of liens and for an order pursuant to 11 USC § 365(a) authorizing the rejection of distributor agreements that may be executory contracts.

## SUMMARY OF RELIEF REQUESTED

1.    An order authorizing the sale of the label and associated brands owned by Capture free and clear of liens, claims, interests, and encumbrances;

2.    To the extent Capture has an interest in the wine inventory and direct-to-consumer mailing list owned by Capture Wines, LLC (Case No. 14-11161), an order authorizing the sale of the inventory and customer list free and clear of liens, claims, interests, and encumbrances;

3. To the extent Capture has an interest in the distributor agreements of Capture Wines, LLC, that may be executory contracts, an order allowing rejection of the agreements

4. A finding that the buyer is a good faith purchaser within the meaning of 11 USC § 363(m).

5. A finding that the buyer is not related to Capture or any of the related entities, and, as such. is not a successor to Capture.

## THE SALE MOTION

1. Capture filed for relief under chapter 11 on August 8, 2014, and is a debtor in possession.

2. Capture owns a trademark label and associated brands as described in Exhibit A to the Asset Purchase and Sale Agreement ("APA") attached hereto as Exhibit 1. Capture may have an interest in the wine inventory and customer list owned by Capture Wines, LLC, a related entity, that is described in Exhibit B to the APA.

3. Capture, through its Managing Member, is informed and believes the label and associated brands are collateral for a $5,000,000 obligation owed to Heritage Bank of Commerce ("Heritage") by Tin Cross Vineyards that is guaranteed by all assets of Capture.

4. Capture has accepted an offer from Jackson Family Wines, Inc., or its affiliated assigns, including without limitation Jackson Family Farms, LLC. ("Jackson") to purchase the wine inventory owned by Capture Wines, LLC, the label and associated brands owned by Capture, and the customer list for $450,000, all cash: $285,000 of the purchase price is being allocated to the wine inventory; $165,000 is being allocated to the label and associated brands, and the customer list. The terms of the sale are set forth in the APA (Exhibit 1), and are incorporated herein by reference. To the extent there are any inconsistencies between the APA and the description of its terms in this motion, the APA controls.

5. The sale of the label and associated brands, and the customer list, are to be free and clear of liens, claims, interests, and encumbrances. The entire $165,000 allocated to the label and associated brands , and the customer list, going to Heritage. To the extent Capture has an interest in the wine inventory of Capture Wines, LLC, the sale shall be free and clear of liens, claims, interests, and encumbrances as provided in the companion motion filed in the

Capture Wines, LLC chapter 11 case, with the liens paid as provided in the motion.

6. Capture requests that the court find Jackson is a good faith purchaser within the meaning of 11 USC § 363(m).

7. The Managing Member of Capture, Michael Foster, believes the sale is in the best interest of the estate and should be approved.

REJECTION OF DISTRIBUTOR AGREEMENTS

8. Exhibit 2 to this motion is a schedule of distributors with whom Capture Wines, LLC, and perhaps Capture, may have distributor agreements. To the extent these agreements are executory, Capture moves for an order authorizing rejection.

BINDING EFFECT

9. Capture requests that the order approving the sale and the rejection of the distributor agreements be binding in all respects upon Capture, and the related entities, the estate, the holders of the affected interests, creditors of Capture and all parties in interest who received notice of this motion and all successor and assigns, including without limitation, any trustee appointed under any chapter of the Bankruptcy Code. Capture requests a finding that Jackson is not related to Capture or any of the related entities, and, as such. is not a successor to Capture.

WHEREFORE, Capture prays for relief as set forth above.


Dated: August 29, 2014.                    /s/ *Michael C. Fallon*
                                           _____
                                           Michael C. Fallon
                                           Attorney for Capture Wine Brands, LLC

EXHIBIT 1

## ASSET PURCHASE AND SALE AGREEMENT
### (*CAPTURE Brand and Inventory*)

This ASSET PURCHASE AND SALE AGREEMENT (this "**Agreement**") is entered into as of August 21, 2014 (the "**Effective Date**") by and between CAPTURE WINE BRANDS LLC, a California limited liability company ("**Brand Seller**") and CAPTURE WINES LLC, a California limited liability company ("**Inventory Seller**" and together with Brand Seller, the "**Seller**"), and JACKSON FAMILY FARMS, LLC, a California limited liability company ("**Brand Buyer**") and JACKSON FAMILY WINES, INC., a Delaware corporation ("**Inventory Buyer**" and together with Brand Buyer, the "**Buyer**").

1. <u>**THE ASSETS**</u>.

   **1.1**    <u>Description of the Assets</u>.  Seller agrees to sell, assign and convey to Buyer, and Buyer agrees to purchase from Seller, on and subject to the terms and conditions provided in this Agreement, all of Seller's right, title and interest in and to: (i) all of Seller's known and unknown right, title and interest in and to any and all names and intellectual property relating to the wine brand CAPTURE, including, without limitation, the trademarks CAPTURE and FLEURON, as more particularly described on <u>Exhibit A</u> attached hereto and incorporated by reference, together with any and all goodwill associated therewith, and all applications, registrations, renewals and extension rights, right to file applications and obtain registrations in Buyer's name, and rights to sue for any past, present or future infringement (collectively, the "**Brand**"); (ii) all the wine inventory described on <u>Exhibit B</u> attached hereto and incorporated by reference (the "**Inventory**"); and (iii) all of Seller's distributor lists and other records related to the Brand, including Seller's direct-to-consumer customer list, but only to the extent that the consent of each direct-to-consumer customer to transfer its information is requested by Seller (via e-mail) and granted by such customer prior to Closing (the "**Proprietary Information**"). The Brand, Inventory and Proprietary Information are collectively referred to herein as the "**Assets**."

   **1.2**    <u>No Assumed Liabilities</u>.  Buyers shall not assume, and Sellers shall have no obligation to assign, any contracts related to the Assets.  Buyers shall not assume and shall not be liable for any debt, liability, or other obligation of any kind or nature (whether due or to become due and whether absolute, accrued, unaccrued, fixed, contingent, matured, unmatured, known or unknown) of the Sellers, including but not limited to debts, liabilities, and obligations relating to or arising out of (i) Brand Seller's ownership, use and licensing of the Brand rights; or (ii) Inventory Seller's use, sale, distribution, production and ownership of the Inventory and operation of the Brand business.  Seller agrees to promptly seek approval from the Bankruptcy Court (as defined in Section 4.3 below) to reject all of Seller's contracts with Distributors, and upon receiving such authority, to thereafter reject such contracts.

2. <u>**PURCHASE PRICE; DEPOSIT**</u>.

   **2.1**    <u>Purchase Price</u>.  The purchase price for the Assets shall be **FOUR HUNDRED FIFTY THOUSAND DOLLARS ($450,000.00)** (the "**Purchase Price**") and shall be paid, ALL CASH, to Seller by Buyer at the Closing (as hereafter defined in <u>Section 12</u>) as provided herein.

   **2.2**    <u>Deposit</u>.  Buyer will, within five (5) business days of the Effective Date, deposit into escrow with Manatt, Phelps & Phillips LLP ("**Escrow Holder**") an earnest money deposit in immediately available funds in the amount of **FORTY-FIVE THOUSAND DOLLARS ($45,000.00)** (the "**Deposit**"), which shall be held for payment at Closing to Seller or, if approved by the Bankruptcy Court (defined in Section 4.3), directly to the warehouse holding the Inventory, Copper Peak Logistics, American Canyon, California.

   **2.3**    <u>Final Inventory</u>.  No earlier than forty-eight hours prior to Closing, Buyer and Seller shall conduct a final physical inventory of the Inventory then on hand to confirm the Inventory (the "**Final Inventory Statement**").

   **2.4**    <u>Balance of Purchase Price</u>.  Not later than 12:00 noon on the Closing Date, Buyer shall deposit with Escrow Holder, by wire transfer of immediately available funds, the balance of the Purchase Price.

3. <u>**DUE DILIGENCE**</u>.

   **3.1**    <u>Due Diligence Period</u>.  As used in this Agreement, the term "**Due Diligence Period**" means the period commencing on the Effective Date and expiring on the date seven (7) days after the Effective Date (the

"**Contingency Date**").  During the Due Diligence Period, Buyer shall review and approve, or disapprove, any and all aspects of the Assets (the "**Due Diligence Matters**").

      **3.2**     Asset Information. Seller shall deliver or make available to Buyer no later than one (1) business days after the Effective Date the following information and documents to the extent in Seller's or its agents' possession or reasonably attainable by Seller: (i) samples of the Inventory; and (ii) information relating to disputes over the Brand rights, if any (all such information being collectively referred to herein as the **"Asset Information"**).

      **3.3**     Buyer's Right to Terminate.  At any time prior to the Contingency Date, Buyer may, in Buyer's sole discretion, for any reason or no reason at all, terminate this Agreement by delivering to Seller and Escrow Holder written notice of such termination.  Buyer's failure to approve the Assets prior to the expiration of the Contingency Date shall be deemed to be a rejection of the Assets and Buyer's termination of this Agreement under this Section 3.3.  If Buyer terminates this Agreement in accordance with this Section 3.3, no party shall have any further obligations hereunder (except in each case for the provisions hereof which survive termination hereof) and Escrow Holder shall return the Deposit and all interest accrued thereon to Buyer.  If at any time prior to the Contingency Date, Buyer approves of the Due Diligence Matters and waives its right to terminate this Agreement as provided in this Section 3.3, then the Deposit shall become non-refundable (absent a Seller Default or a failed condition to closing under Section 6) and shall be credited against the Purchase Price at Closing.

**4.**     **REPRESENTATIONS AND WARRANTIES OF SELLER**.  Each Seller represents and warrants to Buyer that the following matters are true and correct as of the Effective Date and will also be true and correct as of the Closing:

      **4.1**     Organization of Seller.  Each Seller is a limited liability company duly formed and validly existing under the laws of the State of California and qualified to do business in the State of California and Seller is duly qualified to enter into this transaction.

      **4.2**     Due Authorization, Execution and Delivery.  This Agreement is, and all the documents executed by Seller which are to be delivered to Buyer at the Closing will be, duly authorized, executed, and delivered by Seller, and is and will be legal, valid, and binding obligations of Seller enforceable against Seller in accordance with their respective terms, and does not and will not violate any provisions of any agreement to which Seller is a party or to which it is subject.

      **4.3**     Solvency.  Seller has filed for Chapter 11 reorganization in the United States Bankruptcy Court for the Northern District of California ("**Bankruptcy Court**").

      **4.4**     Accuracy of Asset Information.  Seller has no actual knowledge of anything false or misleading in any of the Asset Information or any other materials which have been, and will be delivered to Buyer prior to Closing. Such materials are the complete and correct copies or originals of such materials.

      **4.5**     Brand Rights. Exhibit A attached hereto contains a true, complete and accurate list of Seller's Brand rights.  Brand Seller owns all the Brand rights and the Brand is not vested in any affiliate of Seller or any other person.  There has been no prior license, assignment or transfer of the Brand. To Seller's actual knowledge, Seller's use of Seller's Brand rights does not infringe or violate any trademark, trade name, copyright, or other intellectual property rights of any other party.  Seller has not received any complaint, claim or notice alleging or threatening any such infringement or violation.  Seller has not sent any notice or communication alleging that any other person or entity is or was infringing, violating or misappropriating any of Seller's Brand rights.

      **4.6**     Inventory.  Exhibit B attached hereto contains a true, complete and accurate list of Seller's Inventory.  The Inventory (a) is owned directly by Inventory Seller and none of the Inventory is vested in any affiliate of Seller or any other person, nor is any of the Inventory held by Seller on consignment, (b) is in merchantable condition, fit for its intended purpose, and was produced in compliance with applicable laws; and (c) to Seller's actual knowledge, except for spoilage in numbers consistent with normal industry standards, consists only of items of quality and quantity commercially usable and salable in the ordinary course of business, consistent with Seller's historical business practices.

      **4.7**     No Claims.  Except for the Bankruptcy Court proceedings, there is no litigation, claim, proceeding, or investigation which is pending, or, to Seller's knowledge, threatened or anticipated against or which would impact the Brand or the Inventory and/or the ability of Buyer to sell the Inventory and/or produce and sell wines bearing the Brand after the Closing.

**4.8**   **No Liens**.  The Assets will be delivered to Buyer at Closing free and clear of any liens, claims, encumbrances, and adverse interests of any kind.

**4.9**   **As-Is Sale**.  Except as explicitly warranted or represented in this Agreement: (i) Seller makes no warranties, representations, or assurances relating to the Assets or their ownership or use; and (ii) Seller is transferring the Assets "AS IS."

**5.**   **REPRESENTATIONS AND WARRANTIES OF BUYER**.  Each Buyer represents and warrants to Seller that the following matters are true and correct as of the Effective Date and will be true and correct as of the Closing:

**5.1**   **Organization of Buyer**.  Brand Buyer is a limited liability company duly formed and validly existing under the laws of the State of California and qualified to do business in the State of California.  Inventory Buyer is a corporation duly formed and validly existing under the laws of the State of Delaware and qualified to do business in the State of California. Buyer is duly qualified to enter into this transaction.

**5.2**   **Due Authorization, Execution and Delivery**.  This Agreement is, and all the documents executed by Buyer which are to be delivered to Seller at the Closing will be, duly authorized, executed, and delivered by Buyer, and is and will be legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms, and does not and will not violate any provisions of any agreement to which Buyer is a party or to which it is subject.

**5.3**   **No Financing Contingency**.  No financing for this transaction is being provided or shall be provided by Seller to Buyer or shall be assumed by Buyer. Financing, from whatever source, shall not be a condition or contingency to Closing.

**5.4**   **As-Is Sale**.  Except as explicitly warranted or represented in this Agreement, Buyer is relying solely upon its own due diligence investigation in purchasing the Assets.

**6.**   **CONDITIONS PRECEDENT TO CLOSING**.

**6.1**   **Buyer's Conditions Precedent**.  The following are conditions precedent to Buyer's obligation to consummate the purchase and sale transaction contemplated by this Agreement (the "**Buyer's Conditions Precedent**"): (a) Buyer has not terminated this Agreement in accordance with Sections 3 or 11 of this Agreement within the time periods described in said Sections; (b) there shall have been no material breach of any of Seller's representations, warranties or covenants set forth herein as of the Closing; (c) Seller shall have obtained the approval of Bankruptcy Court for the sale of the Assets to Buyer and a final order of the Bankruptcy Court shall have been entered as provided in Section 14.7 (the "**Court Approval**"); and (d) Seller shall have delivered to the Escrow Holder the items described in Section 8.1. The conditions set forth in this Section 6.1 are solely for the benefit of Buyer and may be waived only by Buyer.  At all times prior to the termination of this Agreement, Buyer may waive any of these conditions in its sole discretion and proceed with the Closing.  In the event of a material failure of any condition described in Sections 6.1(b), (c) and/or (d), (any of the foregoing being a "**Seller Default**"), then the Deposit shall be refunded to Buyer and Buyer shall have the rights set forth in 11.1 hereof.  In the event of a failed condition described in Section 6.1(a), then the Deposit shall be refunded to Buyer and this Agreement shall terminate without any further or continuing right or obligation of the parties.

**6.2**   **Seller's Conditions Precedent**.  The following are conditions precedent to Seller's obligation to consummate the purchase and sale transaction contemplated herein (the "**Seller's Conditions Precedent**"): (a) Buyer has not terminated this Agreement in accordance with Sections 3 or 11 of this Agreement within the time periods described in said Sections; (b) Buyer shall have delivered to Escrow Holder, prior to the Closing, for disbursement as directed hereunder, all cash due from Buyer in accordance with this Agreement; (c) there shall have been no material breach of any of Buyer's representations, warranties or covenants set forth herein as of the Closing; (d) Buyer shall have delivered to Escrow Holder the items described in Section 8.2. The conditions set forth in this Section 6.2 are solely for the benefit of Seller and may be waived only by Seller.  At all times prior to the termination of this Agreement Seller may waive any of these conditions in its sole discretion and proceed to the Closing.  In the event of a failed condition under Section 6.2(a) hereof, the Deposit shall be refunded to Buyer and this Agreement shall terminate without any further or continuing right or obligation of the parties.  In the event of a failure of any other condition under this Section 6.2 where no Seller Default exists, then Seller shall retain the Deposit as liquidated damages under Section 11.2 hereof.

**7.**   **COVENANTS**. From and after the Effective Date and until the Closing, or earlier termination of this

Agreement:

**7.1**     Seller shall not cause any lien or other encumbrances to attach to the Assets.

**7.2**     Seller shall not enter into any other agreement (oral or written) that would be binding upon the Assets after Closing or amend any existing agreement (oral or written) that would be binding upon the Assets after Closing.

**7.3**     Brand Seller shall (i) file timely all renewal applications and other filings required by governmental authorities to preserve the Brand rights; and (ii) pay timely all fees and charges in connection therewith that are required to keep such Brand rights in full force and effect.

**7.4**     Inventory Seller shall (i) keep, store, and maintain the Inventory consistent with past practices and good winemaking standards; and (ii) not sell any Inventory other than sales in the ordinary course consistent with past practice.

**7.5**     Seller shall not transfer or convey any of the Assets or enter into any agreements regarding any disposition of the Assets, other than this Agreement.

**8.     CLOSING DELIVERIES.**

**8.1**     <u>Seller's Closing Documents</u>. On or before one (1) business day prior to the Closing (unless another date is provided herein), Seller shall deliver or cause to be delivered to Escrow Holder the following (collectively, "**Seller's Closing Documents**"), each in a form satisfactory to Buyer:  (i) two (2) originals of an Assignment and Bill of Sale executed by Brand Seller assigning to Brand Buyer the Brand (the "**Trademark Assignment**"), substantially in the form attached hereto as <u>Exhibit C</u>; (ii) two (2) originals of an Assignment and Bill of Sale executed by Inventory Seller assigning to Inventory Buyer the Inventory (the "**Inventory Assignment**"), substantially in the form attached hereto as <u>Exhibit D</u>; (iii) an executed copy of the Final Inventory Statement; (iv) an executed copy of a termination agreement evidencing the termination of any license or similar agreement between Brand Seller and Inventory Seller with respect to the Brand, substantially in the form attached hereto as <u>Exhibit E</u>; (v) evidence of satisfaction of any warehouse liens sufficient to allow Buyer to pick up and remove the inventory from Seller's inventory location as of the Closing Date; and (vi) any other documents reasonably necessary to effectuate the transfer of the Assets to Buyer.

**8.2**     <u>Buyer's Closing Documents</u>. On or before one (1) business day prior to the Closing (unless another date is provided herein), Buyer shall deliver to Escrow Holder the following: (i) the balance of the Purchase Price and such other sums as Escrow Holder may require to pay Buyer's share of the Closing costs, in immediately available funds; (ii) two (2) executed original counterparts of the Trademark Assignment; (iii) two (2) executed original counterparts of the Inventory Assignment; (iv) an executed copy of the Final Inventory Statement; and (v) any other documents reasonably necessary to effectuate the transaction contemplated by this Agreement.

**9.     CLOSING.**  The purchase and sale contemplated herein will close (the "**Closing**") on or before ten (10) days after the Court Approval, but in no event more than sixty (60) days after the Effective Date (the "**Closing Date**").

**10.     CLOSING COSTS.**

**10.1**     <u>Seller's Costs</u>. Seller shall pay (i) all sales, bulk sales, and use fees and taxes, and (ii) any other amounts which this Agreement specifically sets forth as a cost or expense of Seller at Closing.

**10.2**     <u>Buyer's Costs</u>. Buyer shall pay (i) any fees and charges of Escrow Holder for acting as escrow holder under this Agreement, and (ii) any other amounts which this Agreement specifically sets forth as a cost or expense of Buyer at Closing.

**10.3**     <u>Other Costs</u>.  Unless otherwise specified herein, each party shall bear the expense of its own counsel. Unless otherwise specified herein, if the sale of the Assets contemplated hereunder does not occur because of a default by Buyer, Buyer shall pay all escrow cancellation fees.  Unless otherwise specified herein, if the sale of

the Assets does not occur because of a default by Seller, Seller shall pay all escrow cancellation fees. If the sale of the Assets contemplated hereunder does not occur because of the failure of a Seller's Condition Precedent or a Buyer's Condition Precedent, in each case other than due to default, Seller and Buyer shall each pay one-half of the escrow cancellation fees.

## 11.  DEFAULT.

**11.1**  <u>Seller Default</u>. If Seller shall have failed to close escrow and sell the Assets to Buyer on the terms and provisions contained herein within the time for performance as specified herein, or Seller shall otherwise default in any of its obligations under this Agreement, then Buyer shall have all rights and remedies hereunder, at law or in equity (including, without limitation, the right to collect damages and/or to seek specific performance). In such event, the parties hereto agree that specific performance would be an appropriate remedy in response to a Seller Default under this Agreement.

**11.2**  <u>Liquidated Damages</u>. IF BUYER DEFAULTS IN ITS OBLIGATION TO CLOSE THE PURCHASE OF THE ASSETS ON THE CLOSING DATE, SELLER SHALL AS SELLER'S SOLE REMEDY WITH RESPECT TO SUCH BUYER DEFAULT, RETAIN THE DEPOSIT AS FULL, AGREED AND LIQUIDATED DAMAGES. THE PARTIES HERETO EXPRESSLY AGREE AND ACKNOWLEDGE THAT IN THE EVENT OF A DEFAULT BY BUYER IN ITS OBLIGATION TO CLOSE THE PURCHASE OF THE ASSETS ON THE CLOSING DATE, SELLER'S ACTUAL DAMAGES WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO ASCERTAIN, THAT THE AMOUNT OF THE DEPOSIT REPRESENTS THE PARTIES' REASONABLE ESTIMATE OF SUCH DAMAGES, AND THAT SUCH AMOUNT IS NOT UNREASONABLE UNDER THE CIRCUMSTANCES EXISTING AT THE TIME THIS AGREEMENT WAS MADE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING: (1) SELLER WILL INCUR ADMINISTRATIVE COSTS IN THE NEGOTIATION AND REVIEW OF THIS AGREEMENT AND OTHER DOCUMENTS RELATING TO THIS TRANSACTION, AND WILL INCUR DAMAGES BY WITHDRAWING THE ASSETS FROM THE MARKET; (2) CERTAIN COSTS AND OTHER DAMAGES IN AN AMOUNT SUBSTANTIALLY IN EXCESS OF THE DEPOSIT MAY BE INCURRED BY SELLER IF THE SALE OF THE ASSETS CONTEMPLATED HEREBY IS NOT COMPLETED; AND (3) SELLER IS ENTERING INTO THIS AGREEMENT WITH BUYER IN RELIANCE UPON BUYER'S COMMITMENT TO PURCHASE THE ASSETS FROM SELLER. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677.

SELLER'S INITIALS: _____                BUYER'S INITIALS: _____

**11.3**  The provisions of this <u>Section 11</u> shall survive the Closing and shall survive any termination of this Agreement.

## 12.  BROKER.

**12.1**  <u>No Broker</u>. Seller represents and warrants to Buyer there are no brokers or other intermediaries acting on behalf of Seller entitled to receive broker's commissions or fees, or other compensation out of, or with respect to the sale of the Assets. Buyer represents and warrants to Seller that there are no brokers or other intermediaries acting on behalf of Buyer entitled to receive broker's commissions or fees, or other compensation out of, or with respect to the Buyer's purchase of the Assets.

**12.2**  <u>Indemnification</u>. Buyer shall indemnify, defend, and hold the Seller harmless from and against any losses, damages, costs and expenses (including attorneys' fees and costs) incurred by the Seller, or each of them, by reason of any breach or inaccuracy of the Buyer's representations and warranties contained in this <u>Section 12</u>. Seller shall indemnify, defend, and hold Buyer harmless from and against any losses, damages, costs and expenses (including attorneys' fees and costs) incurred by Buyer by reason of any breach or inaccuracy of Seller's representations and warranties contained in this <u>Section 12</u>. The provisions of this <u>Section 12</u> will survive the Closing or any termination of this Agreement.

13. **ESCROW**.

    **13.1**    <u>Delivery of Executed Agreement</u>.  Within one (1) business day after the Effective Date, Buyer and Seller each shall deposit a copy of this Agreement executed by such party (or either of them shall deposit a copy executed by both Buyer and Seller) with Escrow Holder.

    **13.2**    <u>Escrow Instructions</u>.  This Agreement, together with such further instructions, if any, as the parties shall provide to Escrow Holder by written agreement, constitutes the escrow instructions.

    **13.3**    <u>Deposits into Escrow</u>.  Seller shall make its deposits into escrow in accordance with <u>Section 8.1</u>. Buyer shall make its deposits into escrow in accordance with <u>Section 8.2</u>.

    **13.4**    <u>Close of Escrow</u>.  Escrow Holder is authorized to close the escrow only if and when:  (A) Escrow Holder has received all items to be delivered by Seller and Buyer pursuant to <u>Sections 8.1</u> and <u>8.2</u>, and (B) all conditions in <u>Sections 8.1</u> and <u>8.2</u> have been satisfied or duly waived by the party benefited thereby.  Provided that Escrow Holder has not received written notice in a timely manner from Buyer or Seller of the failure of any condition to the Closing or of the termination of the escrow, and if and when Buyer and Seller have deposited into escrow the matters required by this Agreement, Escrow Holder shall make the following deliveries, in the stated order.

        **13.4.1**    <u>To Buyer</u>:  Deliver to Buyer, (i) an original of the Brand Assignment; (ii) an original of the Inventory Assignment; and (iii) any funds deposited by Buyer, and any interest earned thereon, in excess of the amount required to be paid hereunder.

        **13.4.2**    <u>To Seller</u>:  Deliver to Seller, (i) the balance of the Purchase Price, minus the Closing costs, prorations and adjustments to be paid by Seller, and minus any amounts necessary to satisfy any warehouse lien relating to the Inventory as instructed by the Bankruptcy Court, (ii) an original of the Brand Assignment; (iii) an original of the Inventory Assignment, and (iv) copies of all other closing documents.

14. **MISCELLANEOUS**.

    **14.1**    <u>Authority</u>.  Each individual and entity executing this Agreement represents and warrants that he, she or it has the capacity set forth on the signature pages hereof with full power and authority to bind the party on whose behalf he, she or it is executing this Agreement to the terms hereof.

    **14.2**    <u>Notices</u>.  Any communication, notice or demand of any kind whatsoever which either party may be required or may desire to give to or serve upon the other must be in writing and delivered by personal service (including express or courier service), by electronic communication, whether by email or telecopy (with any email confirmed by no bounce back message and any telecopy confirmed), or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| Buyer: | Jackson Family Farms, LLC | Seller: | Capture Wine Brands, LLC |
|---|---|---|---|
| | Jackson Family Wines, Inc. | | Capture Wines, LLC |
| | 421 Aviation Blvd. | | c/o Hackard Law |
| | Santa Rosa, California  95403 | | 10630 Mather Boulevard |
| | Attn: Jeff Wesselkamper | | Mather, California 95655 |
| | Tel:  (707) 544-4000 | | Attn: Mike Foster |
| | Fax:  (707) 547-4767 | | Tel: (916) 313-3034 |
| | Email:  jeff.wesselkamper@jfwmail.com | | Fax: (916) 226-5177 |
| | | | Email:  JLong@hackardlaw.com |

    *With a copy to*:
Michael C. Fallon, Esq.
100 E Street, Suite 219
Santa Rosa, California 95404
Telephone: (707) 546-6770
Facsimile: (707) 546-5775
Email: mcfallon@fallonlaw.net

| Escrow Holder: | Manatt, Phelps & Phillips, LLP |
| | 11355 W. Olympic Blvd. |
| | Los Angeles, California 90064 |
| | Attn:    Carl Grumer |
| | Tel:     (310) 312-4000 |
| | Fax:     (310) 312-4224 |

Any party may change its address for notice by written notice given to the other in the manner provided in this Section.  Any such communication, notice or demand will be deemed to have been duly given or served on the date personally served, if by personal service, on the date of confirmed dispatch, if by electronic communication, or three (3) days after being placed in the U.S. Mail, if mailed.

**14.3**    Confidentiality.  Each party agrees that, except as otherwise set forth in this Agreement, and except as may be reasonably required for Buyer to conduct its due diligence, or as provided by law or unless compelled by an order of a court, it shall keep the contents of this Agreement and any information related to the transaction contemplated hereby confidential and further agrees to refrain from generating or participating in any publicity statement, press release, or other public notice regarding this transaction without the prior written consent of the other party unless required under applicable law or by a court order.

**14.4**    Announcements.  Buyer and Seller shall jointly agree on any communications and announcements related to the sale of the Assets to Buyer.

**14.5**    General Provisions.  The General Provisions set forth in the Addendum attached hereto are incorporated herein by this reference.

**14.6**    Exhibit List

| ADDENDUM | General Provisions |
| EXHIBIT A | Brand |
| EXHIBIT B | Inventory |
| EXHIBIT C | Form of Trademark Assignment |
| EXHIBIT D | Form of Inventory Assignment |
| EXHIBIT E | Form of Trademark License Termination |

**14.7**    Bankruptcy Court Approval.  The effectiveness of this agreement is subject to and conditioned upon the entry and finality of one or more unstayed orders of the Bankruptcy Court, not later than 45 days after the Effective Date: (i) authorizing the Seller to enter into and perform this Agreement; (ii) authorizing and ordering the sale of the Assets free and clear of all liens, claims, interests and encumbrances; (iii) determining Buyer to be in good faith pursuant to Bankruptcy Code §363(m); and (iv) finding that Buyer is not liable as a successor to Seller.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives to be effective as of the date set forth above.

SELLER:

CAPTURE WINE BRANDS LLC,
a California limited liability company

By: _____
Name: MICHAEL FOSTER
Title: MANAGER

CAPTURE WINES LLC,
a California limited liability company

By: _____
Name: MICHAEL FOSTER
Title: MANAGER

BUYER:

JACKSON FAMILY FARMS, LLC,
a California limited liability company

By: _____
Name: Jeff D. Wesselkamper
Title: Assistant Secretary

JACKSON FAMILY WINES, INC.,
a Delaware corporation

By: _____
Name: Jeff D. Wesselkamper
Title: Executive Vice President &
Chief Legal Officer

# ADDENDUM

## GENERAL PROVISIONS

A.      Applicable Law.  This Agreement is governed by and construed in accordance with the laws of the State of California.

B.      Waivers.  Any waiver, modification, consent or acquiescence with respect to any provision of this Agreement shall be set forth in writing and duly executed by or in behalf of the party to be bound thereby.  No waiver by any party of any breach hereunder will be deemed a waiver of any other or subsequent breach.

C.      Entire Agreement.  This Agreement is the entire Agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether oral or written, between the parties with respect to the matters contained in this Agreement.

D.      Time Is Of The Essence.  Time is of the essence in the performance of and compliance with each of the provisions and conditions of this Agreement.

E.      Further Acts.  The parties agree to execute such instructions to Escrow Holder and such other instruments and to do such further acts as may be reasonably necessary to carry out the provisions of this Agreement.

F.      Inducements To Execute.  The making, execution and delivery of this Agreement by the parties hereto have been induced by no representations, statements, warranties or agreements other than those expressly set forth herein.

G.      Severability.  If any term or provision of this Agreement shall be claimed by either party to be invalid, void or unenforceable, the parties shall negotiate in good faith for not less than ten (10) days to modify this Agreement so as to accomplish the original intent of the parties in an acceptable manner.  If there is no agreement, either party may bring an action at law, in which the Court shall first determine whether this Agreement can and should be reformed and performed by the parties, or whether this Agreement should be declared void and unenforceable in its entirety, and in either event, to what extent an award should be made to any party.

H.      Section Headings.  Section headings of this Agreement are solely for convenience of reference and shall not govern the interpretation of any of the provisions of this Agreement.

I.      Assignments.  Neither this Agreement nor any of the rights or obligations of Seller hereunder may be transferred or assigned by Seller without the prior written consent of the Buyer.  Buyer may assign its rights hereunder to an entity that is owned and controlled by, or under common control with, Buyer or the Jackson family, provided that the original named Buyer shall not be released from liability under this Agreement upon such assignment.  Subject to the terms hereof, this Agreement is binding upon and inures to the benefit of each of the parties hereto and to their respective transferees, successors, and assigns.

J.      Interpretation.  The Exhibits to this Agreement are incorporated as part of this Agreement.  Whenever required by the context of this Agreement, the singular includes the plural and the masculine includes the feminine and vice versa.  The term "including" and words of similar import mean "including, without limitation."  This Agreement has been negotiated by both parties and must not be construed for or against either party.  There are no third party beneficiaries of this Agreement.

K.      Not a Joint Venture.  Notwithstanding anything to the contrary contained herein, this Agreement shall not be deemed or construed to make the parties hereto partners or joint venturers, or to render either party liable for any of the debts or obligations of the other, it being the intention of the parties to merely create the relationship of seller and buyer with respect to the Property to be conveyed as contemplated hereby.

L.      Dates.  If any of the dates specified in this Agreement falls on a Saturday, a Sunday, or a holiday, then the date of such action will be deemed to be extended to the next business day.

M.      Survival.  Except as specifically provided in the Agreement, the terms and provisions hereof which by their terms provide that they survive, and any other term which, by its nature, would need to survive to give the full effect thereto, shall survive the Closing and delivery and/or recordation of the Deed, and shall not be merged with the Deed, and shall survive any termination of this Agreement.

N.      Counterparts.  This Agreement may be executed by facsimile or e-mail/pdf transmission and in any number of counterparts, each of which will be deemed an original, but all of which when taken together will constitute one and the same instrument.

Case: 14-11162    Doc# 11    Filed: 08/29/14    Entered: 08/29/14 13:12:43    Page 13 of 22

**EXHIBIT A**

**BRAND**

| Jurisdiction | Mark | Serial Number | Registration Number | International Class |
|---|---|---|---|---|
| United States | CAPTURE | 77516840 | 3696760 | 033 |
| United States | FLEURON | 85054258 | 3942221 | 033 |

Including any and all rights of Seller accruing by virtue of usage by Seller anywhere in the world of any of the CAPTURE and FLEURON brands and related sub-brands, specifically, ALLIANCE, HARMONIE, RÉVÉLATION, TRADITION, WICHCRAFT, PETIT PLAISIR, LES PIONNIERS, MA VIE, and DARK ROSÉ.

## EXHIBIT B

## INVENTORY

| Item | Units |
|------|-------|
| 12SBT750 (2012 Tradition Sauvignon Blanc 750) | 6,742 |
| 10ALL750 (2010 Alliance Red Wine 750) | 3,581 |
| 12SBLP750 (2012 Les Pionniers Sauvignon Blanc 750) | 694 |
| 10HAR750 (2010 Harmonie Red Wine 750ML) | 689 |
| 08FLCS750 (2008 Fleuron Red Wine 750ML) | 573 |
| 08DR750 (2008 Dark Rose 750ML) | 336 |
| 09SBT750 (2009 Tradition Sauvignon Blanc 750) | 218 |
| 12SBLP375 (2012 Les Pionniers Sauvignon Blanc 375) | 393 |
| 09REV750 (2009 Revelation 750) | 172 |
| 10FLCH750 (2010 Fleuron Chardonnay 750ML) | 148 |
| 09HAR750 (2009 Harmonie Red Wine 750) | 100 |
| 10SBT750 (2010 Tradition Sauvignon Blanc 750) | 57 |
| 08SBT750 (2008 Tradition Sauvignon Blanc 750) | 45 |
| 10HAR3L (2010 Harmonie Red Wine 3L) | 11 |
| 10HAR375 (2010 Harmonie Red Wine 375ML) | 82 |
| 09ALL750 (2009 Alliance Red Wine 750ML) | 39 |
| 10ALL375 (2010 Alliance Red Wine 375ML) | 74 |
| 10REV750 (2010 Revelation Cabernet Sauvignon 750) | 37 |
| 09REV3L (2009 Revelation Cabernet Sauvignon 3L) | 9 |
| 10REV3L (2010 Revelation Cabernet Sauvignon 3L) | 9 |
| 10SBLP750 (2010 Les Pionniers Sauvignon Blanc 750) | 36 |
| 09FLCH750 (2009 Fleuron Chardonnay 750ML) | 33 |
| 10FLSB750 (2010 Fleuron Sauvignon Blanc 750ML) | 30 |
| 09SBLP750 (2009 Les Pionniers Sauvignon Blanc 750) | 22 |
| 09HAR3L (2009 Harmonie Red Wine 3L) | 5 |
| 10REV375 (2010 Revelation Cabernet Sauvignon 375ML) | 36 |
| 11SBLP750 (2011 Les Pionniers Sauvignon Blanc 750) | 18 |
| 10DR750 (2010 Dark Rose 750ML) | 15 |
| 09DR750 (2009 Dark Rose 750ML) | 14 |
| 10WCH750 (2010 Fleuron wichcraft Chardonnay 750ML) | 13 |
| 11SBT750 (2011 Tradition Sauvignon Blanc 750) | 13 |
| 09FLCS750 (2009 Fleuron Cabernet Sauvignon 750ML) | 11 |
| 10HAR1.5 (2010 Harmonie Red Wine 1.5L) | 5 |
| 10ALL1.5 (2010 Alliance Red Wine 1.5L) | 4 |
| 08PTPL500 (2008 Petit Plaisir 500ML) | 9 |
| 09REV1.5 (2009 Revelation Cabernet Sauvignon 1.5L) | 3 |
| 11DRK750 (2011 Dark Rose 750) | 4 |
| 12FLSB750 (2012 Fleuron Sauvignon Blanc 750ML) | 3 |
| 09ALL375 (2009 Alliance Red Wine 375ML) | 5 |
| 09ALL1.5 (2009 Alliance Red Wine 1.5L) | 1 |
| 10REV1.5 (2010 Revelation Cabernet Sauvignon 1.5L) | 1 |
| 11FLCH750 (2011 Fleuron Chardonnay 750ML) | 1 |
| 11SBLP375 (2011 Les Pionniers Sauvignon Blanc 375) | 2 |
| 11SBT375 (2011 Tradition Sauvignon Blanc 375) | 1 |
| 12SBT375 (2012 Tradition Sauvignon Blanc 375) | 1 |
| 1 Bottle (1.5L-Magnum) wooden box | 22 |
| 3 Bottle Wooden Box (3 bottle wooden box - 750ML) | 18 |

<u>**EXHIBIT C**</u>

**FORM OF TRADEMARK ASSIGNMENT**

THIS ASSIGNMENT is entered into this _____ day of _____, 2014, by and between CAPTURE WINE BRANDS LLC, a California limited liability company ("**Assignor**"), and JACKSON FAMILY FARMS, LLC, a California limited liability company ("**Assignee**").

WHEREAS, Assignor is the sole and exclusive owner of certain trademarks as set forth on <u>Exhibit A</u> attached hereto, for which it has either procured a U.S. federal registration or accrued certain rights through usage (collectively, the "**Property**"), and further is the sole and exclusive owner of all business goodwill related therewith and symbolized thereby, worldwide (the "**Territory**");

WHEREAS, Assignee desires to acquire from Assignor all of its rights, title and interest in such Property and all business goodwill related therewith;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1. <u>Assignment</u>. Assignor hereby assigns, transfers, conveys and grants to Assignee, its successors, assigns and legal representatives forever, Assignor's entire right, title and interest in and to such Property throughout the world in perpetuity, together with the goodwill associated therewith and that part of the Assignor's business connected with the use thereof and symbolized thereby, and any and all of Assignor's other rights, privileges and priorities provided under state and federal law of the United States, and under the laws of any and all foreign jurisdictions with respect to the Property, including without limitation, Assignor's common law rights and rights under the laws of unfair competition, and any and all rights of action at law and suits in equity to recover for past infringements of the Property currently known to Assignor as of the date hereof or that may become known after the date of this Agreement (the "**Transferred Rights**"), and any and all of Assignor's rights to obtain renewals, reissues, and extensions for such Property upon registration of such Property throughout the world, or other legal protections pertaining to the Transferred Rights.

2. <u>Further Assurances</u>. Assignor covenants that it will, at any time and from time to time upon not less than ten (10) business days prior written request therefor, at Assignee's sole expense and without the assumption of any additional liability therefor, execute and deliver to Assignee, and its successors and assigns, any new or confirmatory instruments and take such further acts as Assignee may reasonably request to fully evidence the assignment and/or sale contained herein and to enable Assignee, and its successors and assigns, to fully realize and enjoy the rights, interests an property assigned or sold hereby.

3. <u>Successors</u>. The provisions of this Assignment are binding upon, and inure to the benefit of, the successors and assigns of Assignor and Assignee, respectively.

4. <u>Counterparts</u>. This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which when taken together constitutes one and the same instrument. The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon, provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Assignment attached thereto.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have caused their duly authorized representatives to execute this Assignment as of the date first above written.

**ASSIGNOR:**

**CAPTURE WINES BRANDS LLC**,
a California limited liability company

By: _____
Name:
Title:

**ASSIGNEE**:

**JACKSON FAMILY FARMS, LLC**,
a California limited liability company

By: _____
Name:
Title:

<u>**EXHIBIT D**</u>

**FORM OF INVENTORY ASSIGNMENT**


THIS ASSIGNMENT AND BILL OF SALE (this "**Assignment**") is made as of _____ __, 2014 by and between CAPTURE WINES LLC, a California limited liability company ("**Assignor**"), and JACKSON FAMILY WINES, INC., a Delaware corporation ("**Assignee**").

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Assignor grants, sells, bargains, conveys, transfers and assigns unto Assignee all of Assignor's right, title and interest, now held or hereafter obtained, in and to all wine inventory and dry goods described on <u>Exhibit 1</u> attached hereto.

Assignor represents and warrants to Assignee that (1) Assignor is the sole and exclusive owner of all right, title and interest in and to the property, rights and interests conveyed and assigned hereby and (2) such property, rights and interests are hereby transferred to Assignee free and clear of all liens, encumbrances and interests of others.

Assignee accepts the foregoing assignment.

Assignor covenants that it will, at any time and from time to time upon not less than ten (10) business days prior written request therefor, at Assignee's sole expense and without the assumption of any additional liability therefor, execute and deliver to Assignee, and its successors and assigns, any new or confirmatory instruments and take such further acts as Assignee may reasonably request to fully evidence the assignment and/or sale contained herein and to enable Assignee, and its successors and assigns, to fully realize and enjoy the rights, interests an property assigned or sold hereby.

The provisions of this Assignment are binding upon, and inure to the benefit of, the successors and assigns of Assignor and Assignee, respectively. This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which when taken together constitutes one and the same instrument. The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon, provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Assignment attached thereto.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have caused their duly authorized representatives to execute this Assignment as of the date first above written.

**ASSIGNOR:**

**CAPTURE WINES LLC**,
a California limited liability company

By: _____
Name:
Title:

**ASSIGNEE**:

**JACKSON FAMILY WINES, INC.**,
a Delaware corporation

By: _____
Name:
Title:

**FORM OF TRADEMARK LICENSE TERMINATION**

This TERMINATION OF TRADEMARK LICENSE AGREEMENT ("**Termination Agreement**") is made as of _____, 2014 (the "**Termination Date**"), by and between Capture Wine Brands LLC ("**Licensor**") and Capture Wines LLC ("**Licensee**").

WHEREAS, LICENSEE and LICENSOR are parties to a certain trademark license agreement (the "**Trademark License Agreement**").

WHEREAS, LICENSEE and LICENSOR are acting as sellers in a transaction whereby ownership of certain brands and brand assets is being transferred to third party buyers in exchange for consideration (the "**Asset Sale**").

WHEREAS, the Asset Sale includes certain brands that are subject to the Trademark License Agreement, namely, Capture, Fleuron, Tradition, Alliance, Les Pionniers, Harmonie, Dark Rosé, Révélation, Wichcraft, Petit Plaisir, and Ma Vie  (the "**Brands**").

WHEREAS, in connection with the Asset Sale, LICENSEE and LICENSOR mutually agree to terminate the Trademark License Agreement as of the Termination Date.

NOW THEREFORE, in consideration of the mutual covenants and obligations stated herein, for good and valid consideration, the receipt and adequacy of which are hereby acknowledged, LICENSEE and LICENSOR hereby agree that effective as of the Termination Date, the Trademark License Agreement, and any effective addenda thereto, shall be terminated and thereafter, LICENSEE shall have no further right to produce, sell, or distribute wine using the Brands.

The conditions, covenants, and agreements contained in this instrument shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors, and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Termination Agreement as of the Termination Date.

**CAPTURE WINE BRANDS LLC**,　　　　　　**CAPTURE WINES LLC,**
a California limited liability company　　　　a California limited liability company


By: _____　　By: _____
Name:　　　　　　　　　　　　　　　　Name:
Title:　　　　　　　　　　　　　　　　　Title:

EXHIBIT 2

**DISTRIBUTORS / OUT-OF-STATE RETAIL / OTHER**

| Company name | Address | Contact |
|---|---|---|
| Agajanian Winery | 10174 Highway 41, Madera, CA  93636 | 559-448-0658 |
| Artisanal | 1200 Dobbins Road, Banner Elk, NC 28604 | Bill Green, 828-898-5395 |
| Ask Wine | Askwine.com c/o MS4 LLC P.O. Box 590845 San Francisco, CA 94159-0845 | Kenji Shimodaira, 415.412.8058 |
| Atlanta Wholesale | PO Box 44127, Atlanta Ga 30336 | 404.696.1681 |
| Cork & Fork | 7110 Bethesda Lane Bethesda, MD 20814 | Anna Landragin, 301-841-7204 |
| Crush Wines | Imperial Wine Wholesalers 6374 Montessouri Street Las Vegas, NV 89113 | Patrick Pretz, 702.743.6628 |
| Destination Cellars | 45662 Terminal Drive, Suite 121 Dulles, VA 20166 | davidk@destinationcellars.com 703-327-3109 |
| Farrell Distributing Corporation | 5 Holmes Road South Burlington, VT 05403 | Frank Reickert, 802.864.4015 |
| Fifth City Wine & Spirits | 112 S 2nd St, Clarksville, TN 37040 | Jane Olsen, Phone:(931) 552-9295 |
| Finewine.com | 20 A Grand Corner Ave, Washington Center, Gaitherburg, MD, 20878 | Cecile 301.987.5933 |
| Gilt | 2 Park Avenue, 4th Floor, New York, NY 10016 | (877-445-8692) |
| Global Wine Company, Inc | 10 Liberty Ship Way Suite 300 Sausalito, CA 94965 | Kent Fitzgerald, 415-339-3050 |
| Global Wines | 1401 Los Gamos Dr. #230 San Rafael, CA 94903 | Tim Marson, 415-446-2703 (office) |
| Grove Street Brokers | 1433 Grove Street Healdsburg, California 95448 | Rick Raffaini, 707.431-4252 |
| Heidelberg Distributing | 3801 Parkwest Drive | Columbus, Ohio 43228 | 614.308.0400 |
| Inspirato | 1637 Wazee St, Denver, CO 80202 | (303) 586-7771 |
| Invino | 19698-B Eighth Street East, Sonoma, CA 95476 | Paul Manchester, 917.741.7302 |
| Juice wine | 745-B West Johnson Street, Raleigh, North Carolina 27603 | Greg Marvin, 919/833-1413 office |
| Lot 18 | 2 Clark Place, Mahopac, NY 10541 | |
| Major Brands Inc. | 550 East 13th Avenue North Kansas City, MO 64116 | Trisha Cluckey, (p) 816-221-1070 ext. 2277 |
| Martin Scott Wines, LTD. | 1981 Marcus Avenue Suite E-117 Lake Success, NY 11042 | (845) 368-0066 |
| Mills Fine Wine | 87-89 Main Street Annapolis, MD 21401 | Peter Finklestein, 410-263-2888 |
| MS Walker, MA | 20 Third Ave. Somerville, MA  02143 | Chip Cohen, Christine Bono, 617.440.1933 |
| Mt Global, LLC | PO Box 643, 26643 Fallbrook Avenue, Bay H Wyoming, MN 55092 | 651.462.3004 |
| MT Global, LLC/Amara Wines | PO Box 643, 26643 Fallbrook Avenue, Bay H Wyoming, MN 55092 | 651-462-3007 |
| Nice Legs Inc. | 506 Shaw Road Ste 329 Sterling, VA 20166 | Nikki Vakindacha, 703-707-0644 |
| Pine state trading Co | 100 Enterprise Ave, Gardiner, ME  04345 | sam Brown, 800.873.3825 |
| Portfolio Distribution, LLC | 15849 N. 71st Street, Suite 100 Scottsdale, AZ 85254 | Sandra Kush |
| Prime Wine & Spirits | 1256-B Oakbrook Drive Norcross, GA 30093 | Gloria Kantor, 770-582-0115 |
| Provino Wines | 500 Bicentennial Way, Suite 300 Santa Rosa, CA 95403 | Jen Chervenka, 707-235-1055 |
| Quintessentially Wine | Quintessentially Wine, 29 Portland Place, London , W1B 1QB | Ed Gerard |
| Republic National Distributing Company | 1010 Isuzu Parkway Grand Prairie, TX 75050 | |
| Republic National Distributing Company | 441 S.W. 12th Avenue Deerfield, FL 33442 | Alma Ramirez, (954) 421-9990 |
| Republic National Distributing Company | 6511 Tri-County Parkway Schertz, TX 78154 | Kathy Real, 210.230.7193 |
| Republic National Distributing Company | 441 S.W. 12th Avenue Deerfield, FL 33442 | Alma Ramirez, (954) 421-9990 |
| Republic National Distributing Company | 9423 N. Main Street Jacksonville, FL 32218 | Renee McLauchlan, (904) 751-0090 |
| Republic National Distributing Company | 4901 Savarese Circle N Tampa, FL 33634 | Doug Rgea, (813) 885-3200 |
| Republic National Distributing Company – South Caro | PO Box 3389 West Columbia, SC 29171 | Patrick Brunette, 803-936-3504 |
| Republic National Distributing Phoenix | 624 N. 44th Avenue Phoenix, AZ 85043 | Ryan Millenbaugh, 602-353-6792 |
| SWS of NY, Liberty Wines | 345 Underhill Blvd, Syosset, NY 11791 | Bobette Schaefer, (516) 921-9005 |
| Tenzing Distr. | 165 North Morgan Street Chicago, IL 60607 | Patrick Witt, 312.237.4000 |
| The Henry Wine Group CA | 4301 Industrial Way Benicia, CA 94510- USA-CA | (707)745-8500 |
| The Wine Gallery | 2411 East Coast Highway #250 Corona del Mar, CA 92625 | Chris Olsen, 949.675.3410 |
| Trinity Fine Wines | 8000 Southpark Terrace Littleton, CO 80120 | Shauna Floyd, 303.743.2422 |
| Utah Department of Alcoholic Beverage Control | 1625 S 900 W Salt Lake City, Utah 84104 | Bottleneck Distr |
| vente-privee | 345 Hudson Street, New York, NY 10014 | Chris Fava, 202.374.5888 |
| Vinfolio | 1890 Bryant Street Suite 208 San Francisco, CA 94110 | Elizabeth Grubel |
| Vintner's Reserve LLC | 11070 Graceland Lane Frisco, TX 75034 | Dave Coleman. 757.651.3122 |
| Water & Wine | 141 Stirling Rd, Watchung, NJ 07069 | Phone:(908) 755-9344 |
| Wheels Up | 220 West 42nd Street New York, NY 10036 | Justin Walker, 212.257.6721 |
| Wild Ginger | 1401 3rd Avenue Seattle, WA 98101-2105 | Jake Kosseff, 206.390.4450 |
| Winestyr | 666 W Hubbard St, Chicago, IL 60654 | Bob Wilson (312) 243-4820 |
| Winetasting Netwrok/Wholesale #17 | 2545 Napa valley Corporate Drive, Ste C, Napa Ca 94558 | Lori Bourke, 707.265.1528 |
| XOJET, Inc. | 2000 Sierra Point Parkway, Suite 200 Brisbane, CA 94005 | Chuck Stumpf, 650.676.4780 |
| Young's market CO, Southwest | 14402 Franklin Avenue Tustin, CA 92780 | 602.353.6146 |
| RSVP Wines | PO Box 15305 Baltimore, MD 21220 | 443-844-8267 |
| Amara Wines | 7800 Elm St. NE , Fridley, MN 55432 | 763.572.9463 |